RALPH REFSON, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 43456.)

Court of Claims, November 7, 1966.

*Louis Tieger* for claimant. *Louis J. Lefkowitz, Attorney-General* (*Henderson G. Riggs* of counsel), for defendant.

HENRY W. LENGYEL, J. The claimant was the operator of a cafeteria concession at Belleayre Ski Center, which was owned

and operated by the State of New York. Claimant was injured on February 26, 1962. His claim was duly filed.

The main building, with which we are herein concerned, contained a cafeteria and other facilities which were used by skiers and others of the general public. Said building was constructed in 1954 and, along with the other facilities available at the ski center was maintained by the State of New York. An open porch, approximately 15 feet in width with an overhanging roof supported at the open end by posts, extended the length of said building. The exterior wall of the building for a height of about 3 feet from the floor of the porch was constructed of stone work or stone facing which was capped at the top by separate sections of slate-like material, each about 40 inches long, 7 inches wide, and an inch to an inch and a half thick. This ledge or sill was placed so that it slanted at about a 30-degree angle downward towards the porch floor. Each section of slate or stone capping was estimated to weigh in excess of 25 pounds.

On February 26, at about 3:00 P.M., the claimant walked along the porch towards the cafeteria entrance. The porch floor was covered with snow and ice, as might be expected of an open porch at a ski center in the Winter. In order to steady himself as he walked the claimant stayed close to the exterior wall of the building and rested one hand on the aforesaid stone capping. As claimant proceeded along the porch in this fashion, one of the stone ledges came loose and fell from its position, striking claimant's left leg.

At the outset of the trial, as well as in the trial memorandum submitted by claimant's counsel, it was made clear that claimant took the position that the doctrine of *res ipsa loquitur* was applicable to this accident and that claimant intended to rely upon said doctrine. Consistent with this position, the claimant did not offer any evidence to account for the accident. As was stated in *Zaninovich* v. *American Airlines* (26 A D 2d 155, 157–158): " The New York rule appears to be quite clear and settled that a plaintiff must elect whether he relies on *res ipsa loquitur* or proof of specific cause of accident. * * * The requirement to elect has been blunted by a corollary rule which permits the plaintiff to rely on the doctrine despite evidence of specific cause of accident so long as the evidence does not fully account for the accident." (See, also, *Bressler* v. *New York R. T. Corp.*, 270 N. Y. 409, 413; *Bailey* v. *Bethlehem Steel Co.*, 277 App. Div. 798, affd. without opn. 302 N. Y. 717; *Cunningham* v. *Lence Lanes*, 25 A D 2d 238, 239; *Fischer* v. *Johnson & Sons*, 20 Misc 2d 891.)

Having established that the claimant relied upon *res ipsa loquitur*, it is now necessary to determine whether said doctrine applies to the facts presented to the court. In *George Foltis, Inc.* v. *City of New York* (287 N. Y. 108, 114–115) is was stated: " ' where the instrumentality which produced an injury is within the exclusive possession and control of the person charged with negligence, and such person has exclusive knowledge of the care exercised in the control and management of that instrumentality, evidence of circumstances which show that the accident would not ordinarily have occurred without neglect of some duty owed to the plaintiff is sufficient to justify an inference of negligence and to shift the burden of explanation to the defendant. (*Slater* v. *Barnes*, 241 N. Y. 284.) ' (*Galbraith* v. *Busch*, 267 N. Y. 230, at p. 234.) In such circumstances the doctrine of *res ipsa loquitur* relieves a plaintiff from the burden of producing direct evidence of negligence, but it does not relieve a plaintiff from the burden of proof that the person charged with negligence was at fault.'' (See, also, *Dittiger* v. *Isal Realty Corp.*, 290 N. Y. 492; *Nabson* v. *Mordall Realty Corp.*, 257 App. Div. 659; Prosser, Torts [3d ed.], §§ 39, 40; Fisch, New York Evidence [2d ed.], § 1136.)

The claimant proved that the State of New York constructed the building in question herein. He proved that the State maintained said building and had control over said building. He also proved that the slate or stone ledge fell from its position and struck his left leg causing him personal injury. Certainly, in any common-sense appraisal of the situation, this was an unusual accident and one which would not occur without carelessness on someone's part. It is our opinion, and we find, that the claimant brought his claim within the applicability of the doctrine of *res ipsa loquitur*. In so doing he established an inference of negligence against the State of New York sufficient to make a prima facie case for the consideration of the court. At that point in the trial, the State had the choice of attempting to rebut said inference, or, of standing on the position that there was not a sufficiently substantial case made upon which the court could predicate liability against the State of New York. As was stated in *Davis* v. *Goldsmith* (19 A D 2d 514): '' The rule is now well settled that when the plaintiff, by his proof, establishes the applicability of the doctrine plaintiff is entitled to go to the jury, but there is no burden of rebuttal, albeit a prima facie case is made out ''. The State made no attempt to advise the court of the manner in which this slate or stone ledge was affixed to the exterior wall; it made no attempt to advise us of the probable useful life of the materials used, if any, to

affix said stone or slate ledge to said wall; it did not advise us of any inspection procedures carried out by the State, or, whether inspection procedures were in fact necessary and reasonable procedures in the maintenance of this building. The State did produce evidence which indicated that hundreds of persons used this park facility. We assume that the State introduced such evidence to indicate that it did not have exclusive control and possession of said building. We do not accept such premise. The fact of public use did not remove the building "beyond the realm of [the State's] observation or control" (*Slater* v. *Barnes, supra,* p. 287). Essentially, the State chose not to rebut the inference of negligence created by claimant's direct case. In so doing, it is for the trier of the facts to determine whether this accident arose from want of care by the State. (See *Nickisch* v. *Madison, 34th St. Corp.,* 185 Misc. 25, affd. 185 Misc. 108, affd. 269 App. Div. 932, affd. 295 N. Y. 833; *Neuhoff* v. *Retlaw Realty Corp.,* 289 N. Y. 293; *Dickinson* v. *Delaware, Lackawanna & Western R. R. Co.,* 3 A D 2d 629.) Normally in claims involving the question of negligent maintenance by the State, the claimant is required to prove that the State had actual or constructive notice of the defect in question. In this instance, however, the State constructed the building and stone or slate ledge which in itself would remove the requirement of proof of notice. Also and more importantly, the application of *res ipsa loquitur* removed the necessity of proving such notice. (See *Dittiger* v. *Isal Realty Corp.,* supra.)

It is our opinion that, under the facts presented and the doctrine of *res ipsa loquitur,* the State of New York was negligent and that its negligence was the sole proximate cause of this accident and injury. The claimant was not contributorily negligent. (See *Mullen* v. *St. John,* 57 N. Y. 567; *Morris* v. *Zimmerman,* 138 App. Div. 114.)

After the accident claimant was removed to a hospital where he received emergency treatment and then returned to his home. Subsequently, he was hospitalized because of said injury and was placed in traction on or about February 27, 1962 and, on or about March 7, 1962, his left leg was placed in a cast which was not removed until March 31, 1962. After the cast was removed claimant used crutches for a short period of time, progressed to a cane, and then was able to walk without artificial assistance. Claimant sustained an internal derangement of his left knee with a tear of the medial meniscus. Claimant had a history of medical difficulties with his left knee and leg. In 1942 he received a medical discharge from the

armed services due in part to phlebitis and varicose veins. In April of 1959, claimant fell and twisted his left leg requiring hospitalization. At that time he experienced "marked swelling, pain, and disability at the level of the knee". We conclude that the claimant had a pre-existing derangement of the left knee with a degenerative process which was seriously aggravated by the injury of February 26, 1962. We find that the injury caused severe pain and discomfort during the period of hospitalization and for some weeks thereafter. We also find that claimant still realizes pain from the left knee, part of which is caused by this injury.

Claimant contended that his concession contract was cancelled because he could not continue with his work after the injury of February 26. His proof does not establish this fact. It is our opinion that said contract was cancelled for reasons other than those relating to his injury.

We find that claimant had hospital and medical expenses in the sum of $628.50.

We reserved decision on the State's motions to dismiss this claim. We now deny said motions.

Claimant is entitled to an award in the sum of $4,628.50.